IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JOSHUA A. CRUMPTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:13-cv-166 (MTT) (CHW) |
| | : | |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Joshua A. Crumpton's application for benefits. In accordance with the analysis below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff, who was born in September 1986, was injured in a single-car accident in November 2008 when he fell asleep at the wheel, "flipped multiple times" and "was thrown out from the car," resulting in facial and jaw fractures, broken bones, and intraventricular hemorrhaging. (R. 56, 62-63, 273-97). In February 2009, Plaintiff filed an application for Title XVI benefits. (R. 194-97). Plaintiff's application was denied initially in June 2009, (R. 89), but in February 2010, before Plaintiff's application was reconsidered, Plaintiff was involved in a second car accident. (R. 59-60). Despite this second accident, which caused Plaintiff shoulder pain and, according to Plaintiff, "aggravate[ed] all the problems from the previous accident," (R. 65, 362-64), Plaintiff's application was denied on reconsideration, (R. 90), and by a reviewing

1

administrative law judge ("ALJ"), (R. 23-37), and the Appeals Council denied Plaintiff's request for review in March 2013. (R. 1-3).

At his administrative hearing before the ALJ, Plaintiff claimed to suffer from memory problems, dental deterioration, weight loss, headaches, stomach problems, and pain throughout his body. (R. 63-73). In Plaintiff's words, "mainly I shut down due to all . . . the pain." (R. 72). The ALJ, however, determined that while there was "no question that [Plaintiff] suffered serious injuries that significantly limited him for a few months after his November 2008 accident," (R. 33), Plaintiff "progressed fairly well after the . . . accident to the extent that he required only routine, outpatient medical treatment, and not very much of that." (R. 34).

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the

evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons are "disabled" for the purposes of receiving benefits under the Social Security Act if they are unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

When evaluating a claimant's disability, the Commissioner follows a five-step "sequential evaluation procedure." 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner determines whether the claimant currently engages in substantial gainful activity. At step two, the Commissioner considers the medical severity of the claimant's impairments.

Next, at step three, the Commissioner determines whether the severity of the claimant's impairments (i) meet or equal the severity of one or more of the impairments specified in the listing of impairments; and (ii) meet the duration requirement. If so, the sequential evaluation procedure stops and the claimant is declared "disabled." If not, the Commissioner assesses the claimant's residual functional capacity, ("RFC"), which is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The Commissioner then proceeds to step four where, based on her RFC assessment, she evaluates the claimant's ability to return to past relevant work despite his or her medically-determinable impairments. Finally, at step five, the Commissioner determines whether there are a sufficient number of jobs in the national economy that the claimant can perform in light of his or her RFC, age, education, and work experience.

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following determinations in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least February 13, 2009, Plaintiff's application date. (R. 25). At step two, the ALJ found that Plaintiff had the "severe impairments of residuals from a fractured left clavicle and scapula." (*Id.*) (internal quotations omitted). The ALJ further found that Plaintiff's "history of pelvic, coccyx, and facial/maxillary fractures" were non-severe because the record indicated that they had healed well. (*Id.*). At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform: "light work . . . except he should perform no more than occasional pushing, pulling or overhead reaching with his non-dominant left arm." (*Id.*). The ALJ noted, at step four, that Plaintiff had no past relevant work, but based on his RFC finding, the ALJ found,

at step five, that Plaintiff could work as a "Garment Sorter," "Car Wash Attendant," or "Small Product Assembler, II." (R. 35-36). Therefore, the ALJ found Plaintiff "not disabled" within the meaning of the Social Security Act. (R. 37).

## ANALYSIS OF PLAINTIFF'S GROUND FOR RELIEF

Plaintiff challenges the Commissioner's decision on only one ground: he argues that the ALJ erred by failing to weigh, on the record, the findings of Dr. Walter S. Hutchings, a non-treating, consultative medical examiner. (Pl.'s Br., Doc. 12, pp. 1-8). Dr. Hutchings examined Plaintiff in May 2009 and determined, among other things, that Plaintiff:

- Could "walk about 30 minutes before his left groin area pain cause[d] him to stop and sit down" for about 20 minutes;
- Could "lift a gallon of milk with his left arm but nothing heavier;"
- Had to "shift positions from sitting to standing in order to stay comfortable;"
- Could not "stoop or squat to pick objects up from the floor;" and
- Had chronic pelvic pain, lower back pain, left shoulder pain, and chronic weakness.

(R. 319-20)

The Commissioner concedes that the ALJ technically erred by failing expressly to evaluate Dr. Hutchings' findings on the record. (Resp., Doc. 13, p. 5) (citing 20 C.F.R. § 416.927). As noted by the Commissioner, however, and as made clear in the cases cited by Plaintiff, this error does not necessarily warrant remand. *See, e.g., Markell v. Astrue*, 2007 WL 4482245 at *4 (M.D. Fla. Dec. 19, 2007) (noting that the ALJ's reasons for discounting a non-treating examiner's opinion were "not so easily inferred" from the ALJ's decision); *see also Norman v. Astrue*, 2011 WL 839405 (N.D. Ga. Mar. 7, 2011) (noting that the ALJ in effect "substituted her opinion . . . for that of an examining specialist," and refusing to consider "*post*

*hoc* arguments" in support of the ALJ's decision). This is so because "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Randolph v. Astrue*, 291 Fed App'x 979, 982 (11th Cir. 2008) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Thus, as the Eleventh Circuit has noted, "[w]hen . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Caldwell v. Barnhart*, 261 Fed App'x 188, 189 (11th Cir. 2008) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

In this case, the ALJ meticulously evaluated all of the medical evidence beginning with treatment records relating to Plaintiff's November 2008 accident. (R. 27-31). Although the ALJ did not expressly assign weight to much of this evidence, including Dr. Hutchings' findings, (R. 29), the ALJ provided a sufficient basis for his opinion. Specifically, the ALJ noted:

> [A]s reflected in the documentary evidence, the claimant progressed fairly well after the November 2008 motor vehicle accident, notwithstanding his noncompliance. Moreover, but for his visit to the local emergency room following the minor motor vehicle accident in February 2010 . . . he required only routine, outpatient treatment from his primary care doctor after July 2009.
>
> . . .
>
> [E]ven the primary care doctor, who apparently began prescribing medication to the claimant in October 2010, found little objective evidence of any meaningful medical problems. In fact, when he saw the claimant in February 2011, the primary care doctor believed the claimant had only mild discomfort.

(R. 34-35)

In other words, the ALJ determined that while Plaintiff suffered serious injuries from his November 2008 accident, those injuries healed quickly and only temporarily impaired Plaintiff's

6

ability to work. (R. 33). Substantial evidence supports the ALJ's characterization of the record. As noted by the ALJ, Plaintiff:

- Underwent successful jaw fixation surgery in November 2008, (R. 273-76);

- Successfully had the fixation hardware removed in January 2009, (R. 371-72);

- In April 2009, was found to have "full range of motion" in his left shoulder; 5/5 strength in his supraspinatus infraspinatus, teres minor, subscapularis, deltoid, hip flexor, quad, and plantar flexion muscles; had only "mild tenderness" over his midshaft clavicle; had "no pain" in reaction to anterior, posterior and lateral compression stress on his pelvis; and had "no pain" on range of motion in his hips. The treating orthopedist, Dr. Richard J. Thomas, noted that Plaintiff's "Pelvic fractures [were] healing nicely, really no symptoms from these. He has no restrictions from this standpoint." (R. 328-29).

- In June 2009, was found to have "no pain on range of motion in his left hip," and "no tenderness . . . over his clavicle." X-rays showed that Plaintiff's clavicle had healed and that his pelvis had almost completely healed. With regard to Plaintiff's pelvis, Dr. Thomas noted, "Can still see the fracture line, I think this is asymptomatic." (330).

- In July 2009, was found to have unremarkable x-rays and full range of motion in his left shoulder, despite claiming to suffer from pain incident to a fall. Dr. Thomas prescribed ice and Aleve. (R. 331).

- Complained of left shoulder pain following a second "moderate speed motor vehicle crash" in February 2010. No fractures or findings were identified, however, and Plaintiff was instructed to take Ibuprofen, Lortab and Norflex. (R. 362-64).

Taken together, these records support the ALJ's determination that Plaintiff's November 2008 accident did not cause impairments that "lasted or [could] be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d) (defining "disability"). Even if Dr. Hutching's findings are accepted as true, those findings date from May 2009, and

they provide no basis for disregarding the findings of medical improvement documented by Dr. Richard J. Thomas, a treating orthopedist, in June and July. Because Plaintiff entirely fails to address this point, and because the record as a whole indicates that the Commissioner's decision is based on proper legal standards and is supported by substantial evidence, it is not recommended that the Court disturb the decision below.

## CONCLUSION

After careful consideration of the record, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 10th day of July, 2014.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge